DONALD GLOVER vs. DEPT. OF CORRECTIONS, ET AL

PRISONER Civil No. 3:02CV1953(AVC)(TPS)

RESPONSE TO MOTION TO DISMISS BY DEFENDANTS

*Donald Glover*

FILED

2003 OCT 31  P 3: 24

US DISTRICT COURT
BRIDGEPORT CT

# Cause of Action

The Plaintiff was convicted in 1993. Because of medication he did not fully realize what had happened to him for at least 2 years. Upon realizing his situation, he filed a Habeas Corpus in 1996. Because medication affected his mental state at the Habeas Corpus hearing, the motion was denied. When required to file a brief in order to appeal this decision to Appellate Court, the Plaintiff was too confused to do so in time, therefore the appeal was dismissed. All attempts to get the appeal re-instated have been denied. He believes that the medication caused the confusion.

Also, the Plaintiff's attorney, Michael Moscowitz, appealed the conviction. In 1996 Mr. Moscowitz sent to the Plaintiff the results of Appellate Court's decision of that appeal, but the Plaintiff could barely read, and could not make sense of that information. In 2001 the Plaintiff re-discovered that information, and, now understanding it, has applied to the Fedaral Public Defender in order to further the appeal.

Dept. of Correction psychiatric staff have said that the Plaintiff's legal claims are not their responsibility. The Plaintiff never agreed that he needed psychotropic medication but doctors can force it on you if they think it necessary. It would seem that medication is used to keep inmates within institutional regulations, it is not admitted that it could have other effects.

This is gross negligence.

*Donald Glover*

This is the Plaintiff's version of the story documented in the Health Services Progress Note of 8-23-93.

The Plaintiff wAS EXAMINED BY THE DOCTOR BECAUSE HE HAD burned himself. The doctor insisted that the Plaintiff take Haldol. The Plaintiff did not believe he needed Haldol and ~~████~~. refused, The doctor loaded a syringe and prepared to inject the Plaintiff. The Plaintiff resisted in the manner described in the document. He was restrained and injected.

Because the Plaintiff believed that further resistance was futile, he signed the document consenting for treatment with anti-psychotic medication dated 11-24-93..He believed that if he refused to sign this document that the medication would be forced on him again.

The Plaintiff believes that the medication rendered him unable to prepare a defense for trial in 1993.

In Garner Correctional Inst. the Plaintiff indicated that he wanted to discontinue medication. Dr. Thankapan told the Plaintiff that he would administer more intensive treatement if the Plaintiff did not take his medicine. This doctor would not listen to the Plaintiff's complaints. The threat of more intensive treatment was held over the Plaintiff until 2001, when he convinced doctors to let him discontinue medication. All information here corresponds to medical records.

*Donald Glover*

The Plaintiff is not raising here the claim that his conviction is illegal because he was not granted Due Process due to not being able to prepare a defense when he could not understand his attorney and therefore his attorney could not understand him. The details needing to be worked out to prove this have not been fully examined. But this should not happen to a person in a normal state of mind, and the Dept. of Correction has perpetrated the abuse by giving doctors authority to keep him medicated. Thereby the confusion becomes compounded. In normal circumstances a malpractice suit would be filed.

To force an inmate to take medicine when he finds it unacceptable is cruel and unusual. The Dept. of Correction thinks it can combine penal with psychiatric concerns but is gambling when they do it that it won't make any difference. In my case it has. Anyone who has been considered so mentally incorrect that he must have medication cannot, by the same token be considered capable of defending himself in a court of law or a prison law library.

The Plaintiff has included documents which illustrate confusion that one could not believe the writer of these pages could suffer.

*Donald Glover*

3:02CV1953(AVC)(TPS)

Dr. Weine is probably the least important defendant in this Section 1983 suit, especially if he only followed directions to secure the plaintiff's signature on the document bearing his name. "Needs glasses" is noted on the document, the plaintiff does not need glasses but was partially blinded by Haldol when he signed.

Dr. Birkowitz initiated the medication. The plaintiff never agreed that it was needed. The issue of competency is categorically the responsibility of the attorney of the person standing trial. If the attorney determines that issue incorrectly, how is there going to be any help for his client?

I can find no record of the exchange between the plaintiff and Dr. Thankappan in in which this doctor threatened the patient with more "intensive" treatment if he did not take his medication. Records of the period say the plaintiff was "medication compliant" Dr. Thankappan was very abrupt whenever the plaintiff started to complain. He wanted to hear the word "fine" in answer to all his questions.

There has been years and years of delay and default in the plaintiff's legal proceedings which was caused by medication impairing his ability to comprehend legal procedure. He could at least be satisfied that his conviction is legal by now; appeals are still pending. The defendants are responsible for this time lost from the plaintiff's life.

Totalitarian governments are known to use these same types of drugs on prisoners to keep them from protesting about their situation. These drugs can be used to inflict punishment and torture. Just because a person has been convicted does not mean that he no longer needs to be competent to defend himself. The very fact that these medications have been prescribed is an indication of mental disease or defect.

This Section 1983 suit might raise the question as to whether the Constitutional rights of at least hundreds of inmates in Connecticut alone are being violated. This Section 1983 suit might be the very one which shows where the inherent fault lies in combining penal and psychiatric concerns.

In 1999, when the Plaintiff complained about Risperdal, Dr. Bogdanoff told the Plaintiff that he would have to be housed in a more restricted unit if he continued to have "problems" with medication. I ask: what constitutes a "problem" with medication?

*Donald Glover*

## A. Parties

List of Defendants: Dept. of Correction

Dr. Birkowitz-New Haven County Jail, Whalley Ave. New Haven, CT 06530

Dr. Weine-same address as above (245 Whalley Ave. New Haven, CT 06530)

Dr. Thankapan-Garner Corr. Inst. P.O. Box 5500, Newtown CT 06470-5500

Dr. Bogdanoff-Garner Corr. Inst. P.O. Box 5500 Newtown CT 06470-5500

Medications used on Plaintiff

Haldol, Cogention-1993-1994

Navane, Cogention-1994-1999

Zyprexia-1999

Respiritol-1999-2001

Prozac-1999-2001

*Donald Brown*

If there is any form of corporal punishment in the USA of today, the medications and other devices of the mental health system are it. The Plaintiff has not complained of the physical and mental discomfort caused by medication nor the effects which impair the ability to physically function and defend one's self. The complaint is that they deprive a person of his own mental capacity. Anyone legally mentally capable cannot be treated as if he were not by D.O.C.

Concerning Statute of Limitations: The violation continued from 1993 to 2001. The Complaint is that medication impaired the ability to comprehend legal procedure, preventing the discovery of the violation until it was discontinued.

The Defendants are at least incompetent/inadequate by committing the violation. Medication which retards agressive impulses will also retard normal assertiveness, even when normal assertiveness is necessary.

In 1993, in testimony concerning evaluation of the Plaintiff, Dr. Paul Amble referred to doctors who wanted to apply more extensive involvement to the Plaintiff when he was first evaluated in 1992. I submit that the Defendant(s) used the opportunity presented when the Plaintiff burned himself to apply that more extensive involvement without his consent. Which is why I say that they tried to Shanghai the Plaintiff to a mental hospital.

Michael Krugel, the subject of an article in the New Haven Register in 1992-93 is an example of an inmate sent to a mental hospital on a doctor's say so. The Haldol was used to put a chemical "bag" over the Plaintiff's head in this (Glover's) case.

It is logical that psychiatry can easily become corrupt/abusive.

The Plaintiff believes his complaint can only be dismissed because all evidence/testimony cannot be presented to the court.

Donald Glover

*Donald Glover* (signature)

also heard such testimony firsthand. On March 26, 1976, Leonid Plyushch, a thirty-nine-year-old mathematician who had spent several years in the psychoprisons before being freed, spoke at a meeting of the New York Academy of Sciences. That produced this memorable exchange:

> Q. What was the most horrifying aspect of your treatment?
> A. I don't know if there are irreversible effects of psychiatric treatment, but all the inmates at Dnepropetrovsk Special Psychiatric Hospital lived in the fear that there would be such effects. They had heard stories of those driven by the treatment into permanent insanity. My treatment, in chronological order, began with haloperidol in big dosages without "correctives" that avoid side effects, essentially as a torture. The purpose was to force the patient to change his convictions. Along with me there were common criminals who simulated [mental] illness to get away from labor camps, but when they saw the side effects—twisted muscles, a disfigured face, a thrust-out tongue—they admitted what they had done and were returned to camp.[15]

Such descriptions stirred newspapers and television networks in the United States to condemn, with great fervor, the Soviets' actions. Not long after Plyushch's testimony, the *New York Times* ran an extensive feature on "Russia's psychiatric jails," in which it likened the administration of neuroleptics to people who weren't ill to "spiritual murder" and "a variation of the gas chamber." Dissidents, the paper explained, had been forcibly injected with Thorazine, "which makes a normal person feel sleepy and groggy, practically turning him into a human vegetable." Neuroleptics were a form of torture that could "break your will."[16]

None of this word choice—torture, Mengele, gas chambers, spiritual murder, human vegetables—could possibly have brought any cheer to Smith, Kline & French, or to other manufacturers of neuroleptics. And with the dissidents' words as a foil, U.S. mental patients were able to make powerful cases, in legal challenges filed in Massachusetts, California, New Jersey, Ohio, and elsewhere, that forced neuroleptic treatment was a violation of their constitutional rights. Some of the details that spilled out during those trials were

*Donald Glover* (signature)

3:02-cv-1953 (AVC)(TPS)

On March 26, 1976, Lenoid Plyusch, a thirty-nine-year-old mathematician who had spent several years in the psychoprisons before being freed, spoke at a meeting of the New York Academy of Sciences. That produced this memorable exchange: Q. What was the most horrifying aspect of your treatment?
A. I don't know if there are irreversible effects of psychiatric treatment, but all the inmates at Dnepropetrovsk Special Psychiatric Hospital lived in the fear that there would be such effects. They had heard stories of those driven by the treatment into permanent insanity. My treatment, in chronological order, began with haloperidol in big dosages without "correctives" that avoid side effects, essentially as a torture. The purpose was to force the patient to change his convictions...

...Not long after Plushch's testimony, the New York Times ran an extensive feature on "Russia's psychiatric jails," in which it likened the administration of neuroleptics to people who weren't ill to "spiritual murder"
...Neuroleptics were a form of torture that could "break your will."

from: Mad In America- Bad Science, Bad Medicine, and the Enduring Mistreatment of the Mentally Ill by Robert Whitaker (Perseus Publishing)

Donald Glover

*Donald Glover* (signature)

The only consistent use of Haldol, Navane, Zyprexia, and Rispredal is to retard agressive impulses. It was used to break the will and destroy the self-assertiveness of Soviet prisoners. That is why the Plaintiff dared not oppose the doctors, especially after it was demonstrated to him that force would be used. Therefore no threat or ultimatum by doctors was opposed. So a person being given these drugs is incapable of competence/consent. The Plaintiff did not willingly let himself be mentally crippled from 1993 to 2001.

note: The Plaintiff filed Federal Habeas Corpus 3:97-CV-659 in 1996. It refers to the appeal by Attorney Moscowitz. The Plaintiff forgot that petition due to impairment of memory caused by medication.

The Court should be interested in CT state habeas CV-02-3752 S, in which the Plaintiff challenges his conviction on grounds of Ineffective Assistance of Counsel. Counsel might be ineffective, but cannot inject the Plaintiff full of drugs. So where does the fault lie?    Donald Glover

*Donald Glover* (signature)

reference to cases for proper/improper use of psychotropic medication:

Nelson v. Heyne, 491 F.2d (7th Cir.)

Breads v. Moehrle, 781 F. Supp. (W.D.N.Y. 1991)

Bee v. Greaves, 910 F.2d (10th Cir. 1990)

United States v. State of Michigan, 680 F. Supp. (W.D. Mich. 1987)

The Plaintiff identifies the doctor who initiated the medication as a small woman past middle age with blue eyes. She told the Plaintiff that the Haldol was for "depression".

If doctors expected the Plaintiff to discontinue medication out of animal instinct they were mistaken. They abused the Plaintiff's intelligence to make him accept a lie and to continue to accept it. A doctor who does not recognize such a situation should not be a doctor. Drs. Thankappan and Bogdanoff threatened the Plaintiff with worse consequences should he not remain medication compliant. The situation at Osborn C.I. was conducive to discontinuance of medication (transferred 2000.)

Mental Health is the lowest form of medicine, requiring the least qualification to practice. Perhaps such curriculum should be discontinued in educational institutions, especially since the truly insane often are unreachable and much harm can be done by the misuse of means.

Donald Glover

The Plaintiff hopes that the Court's Declaration of Violation of his Constitutional Rights will conclude this chapter in this Odyssey.

Donald Glover

I hereby certify that a copy of the foregoing was maild to:

Robert B. Fiske III

Assistant Attorney General

Federal Bar no. 17831

110 Sherman St.

Hartford, CT 06105

on this 24 day of October, 2003

*Donald Glover*