DONALD JOSEPH GLOVER

    v.

DEPT. OF CORRECTIONS, ET AL

PRISONER

DOCKET NO. 3:02cv1953(AVC)(TPS)

FILED
2005 FEB 25 P 4: 05
U.S. DISTRICT COURT
BRIDGEPORT, CONN.

*Donald Glover* (signature)

3:02cv-1953 (AVC)(TPS)   Glover v. Corrections, et al

It is a known factor in criminal activity that some criminals are aware of the normal penalties for their crimes and are willing to trade prison time for the reward that their crime grants them. Organized criminals do it to cover up for their confederates, addicts consider it part of their addiction, and any individual being fanatical or tempermental enough, yet calculating could do it. When prosecutors and judges become aware of this factor, they have been known to impose more severe sentences to discourage it. I suggest that psychiatrists also might try to discourage such activity by adding misery to the list of sanctions against such criminals. This misery could be caused by prescribing psychotropic medications. And because in such cases the criminal in question does not really recognize established authority, it becomes questionable as to if that individual can discern right from wrong, which is a criterion for determining sanity. However, psychiatrists do not have the authority to apply such misery and therefore the scenario becomes that of one underhanded activity begetting another underhanded activity contra it. And the latitude for abuse, corruption, and unfairness is enormous in that scenario. And although psychotropic medications are not certain to cause misery, they do in so many cases as to make the idea considerable, especially when psychiatry has a policy of " we use what works " (quote: Giovanni Gomez, warden of Garner Corr. Inst. where the majority of Connecticut prison inmates recieving psychiatric treatment are housed.)

The Court is now aware.

Donald Glover

The Plaintiff has already stated an accomodation that can be made: He submits that the actions of which he complains by Drs. Thankappan and Bogdanoff were due to their being supplied with incorrect information by the doctors who had treated him before he was handed over to them. For, although the Plaintiff might find fault with the methods of Drs. Thankappan and Bogdanoff, those "faults" can be reasonably explained to satisfaction if Drs. Thankappan and Bogdanoff recognize that the Plaintiff was incorrectly presented to them in the first place. That recognition must be recorded by the Court. Otherwise, it will be asked what information they did have about the Plaintiff.

As concerns the injecting/initiating doctor(s): The Plaintiff must have it recorded by the Court that they made a mistake/misdiagnosis by deciding that the Plaintiff needed medication. Such injections have been found to be illegal by other Courts. Since the Plaintiff has a Liberty interest in avoiding being forced to take medication, he was denied liberties which are rightly his. Just because the Plaintiff is an inmate does not <u>necessarily</u> mean that the doctors actions amounted to malpractice; this Plaintiff claims that in this case they did. Since the injecting/initiating doctor(s) neglected to follow up on the Plaintiff's condition to determine the effects of his medication, the Plaintiff maintains his complaint of Gross Negligence.     But he will settle for a Declaration of mistake/misdiagnosis.

*Donald Glover*

I hereby certify that a copy of the foregoing was mailed to;

Robert Bishop Fiske III

Assistant Attorney General

Federal Bar No. 17831

110 Sherman St.

Hartford, CT 06105

on this 23 day of February, 2005

*Donald Glover*