UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONALD GLOVER | : | PRISONER |
| *Plaintiff* | : | No. 3:02CV1953(AVC) |
| | : | |
| v. | : | |
| | : | |
| DEPARTMENT OF CORRECTIONS | : | |
| *Defendants* | : | SEPTEMBER 19, 2005 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT**

This civil rights case has been brought by Donald Glover, a *pro se* prisoner, pursuant to 42 U.S.C. § 1983, alleging that his federal Eighth Amendment rights were violated by the defendants. The plaintiff named as defendants, the Department of Correction, Dr. Birkowitz, Dr. Weine and Dr. Thankapan, as well as the "medical staff". The plaintiff has not identified in what capacity the individuals are being sued, but it is presumed it is in their individual capacity only. The plaintiff is seeking declarative relief only.

The defendants filed a motion to dismiss, which the Court denied in part, on the ground that the plaintiff had raised an issue as to whether the Statute of Limitations should be tolled during the time period he was allegedly incompetent due to the administration of psychotropic medications and whether the administration of those medications, allegedly against his will, constituted a violation of his Due Process rights. These issues are addressed herein, and the answer to both questions, is no.

Specifically, the plaintiff has alleged that the defendants forcibly injected him with psychotropic medication from 1993 to 2001, and that as a result, he was incompetent and was unable to not only participate in his defense during his criminal trial, but also

1

was not cognizant of his need to appeal. He also claims he was unable to assist his attorney and was not aware of the outcome of the appeals until the medication was ceased in 2001, and consequently, did not learn of the grounds for this civil suit until after the expiration of the Statute of Limitations. The Court also interpreted his claims to constitute a possible Due Process violation, because the medications were allegedly administered against his will.

For the reasons set forth more fully herein, the plaintiff's claims are without merit and the defendants are entitled to summary judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* A "material fact" is one whose resolution will affect the ultimate determination of the case. *Id.* In determining whether a material fact exists, the court must resolve all ambiguities in favor of the non-moving party. *Id.,* at 255. *See also J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990), *cert. denied*, 499 U.S. 921, 11

S.Ct. 1313, 113 L.Ed.2d 246 (1991).  In further comment regarding the use of summary judgment, the Supreme Court has stated:

> summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules, as a whole, which is designed to secure the just, speedy and inexpensive determination of every action.

*Celotex, Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," *Capitol Imaging Assocs. v. Mohawk Valley Medical Assocs.*, 996 F.2d 537, 541 (2d Cir.), *cert. denied*, 510 U.S. 497 (1993), and to "isolate and dispose of factually unsupported claims."  *Celotex Corp.*, at 323-324.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  Those facts that are material will be identified by the substantive law governing the case.  *Anderson,* 477 U.S. at 248.  Once the moving party meets its burden, the burden shifts to the non-moving party.

To defeat a motion for summary judgment, the non-moving party may not merely rely upon unsupported allegations made in their complaint, nor rely on "mere speculation or conjecture" to overcome a motion for summary judgment. *Knight v. Fire Insurance Company*, 804 F.2d 9, 12 (2nd Cir. 1986), *cert. denied*, 480 U.S. 932 (1987).  The evidence must be presented in a manner consistent with its admissibility at trial.  *See First National Bank Co. of Clinton, Ill. v. Insurance Co. of North America*, 606 F.2d 760 (7th Cir. 1979)(in ruling on summary judgment motion, the court properly relied upon documents and exhibits identified by affidavit).  Unsworn statements of the parties,

3

letters addressed to the litigants from third persons, and hearsay which does not fall under one or more exceptions listed in rules 803-805 of the Federal Rules of Evidence, may not be properly considered. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Beyene v. Coleman Security Service, Inc.*, 854 F.2d 1179 (9th Cir. 1988); *Edward B. Marks Music Corp. v. Stansy Music Corp.*, 1 F.R.D. 720 (S.D.N.Y. 1941). Moreover, the plaintiff must point to specific evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

## ARGUMENT

### I. EQUITABLE TOLLING IS NOT APPLICABLE

Mr. Glover's allegations are without merit. Not only did he consent to the medication, but throughout the time in question he filed and participated in numerous habeas corpus actions, appeals and pardon applications, as well as assist his attorney's in doing so. In addition, his attorneys visited him at the correctional facility, filed briefs on his behalf and corresponded with him by mail regarding his appeals for several years. During the time in question, 1996 to 2001, the plaintiff was consumed with his legal issues and pending appeals and they were one of his major stress issues. In addition, during this time period he now seeks to be tolled, the plaintiff held an inmate job, first as a tierman, and later cleaning windows, and sent the money home to his wife to help her care for his daughter, which he certainly could not have been physically or mentally able to do, nor would have been concerned enough about their well-being to do, if he were as incapacitated as he alleged in his Complaint. Consequently, for the reasons set forth

herein, the plaintiff has not met the burden of proof required to justify equitable tolling or proven a Due Process violation. Therefore, his allegations are without merit, are time barred, and consequently, the defendants are entitled to summary judgment.

Equitable tolling is an appropriate remedy "where a plaintiff's medical condition or mental impairment prevented [him] from proceeding in a timely fashion." *Rios v. Mazzuca*, 78 Fed. Appx 742, 743-44 (2d Cir. 2003) (*quoting Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003). *See, Brown v. Parkchester South Condominiums,* 287 F.3d 58,60 (2d Cir. 2002)(equitable tolling may be appropriate in certain instances where the plaintiff's failure to comply with the statute of limitations is attributable to the plaintiff's medical condition). In order to meet this burden a petitioner must show that extraordinary circumstances prevented him from filing his petition on time. *Rios* at 743.

In the Second Circuit, the determination as to whether or not a person is sufficiently mentally disabled to justify tolling of the statute of limitations period is highly case-specific. *Id.* at 744 (*citing Boos v. Runyon*, 2001 F.3d 178 at 184 (2d Cir. 2000). *See, Brown* at 60. The extraordinary circumstances standard established by the Second Circuit requires the plaintiff to demonstrate the existence of a causal relationship between the extraordinary circumstances on which the equitable tolling claim rests, and the lateness of his filing. *Rios* at 743. Applying this standard to the present case, the plaintiff has the burden to prove his allegations that the various psychotropic medications administered by the Department of Correction [hereafter "DOC"] constituted "extraordinary circumstances" because they affected his mental state so severely that he

was unable to timely file his claim during the statute of limitations period. However, the plaintiff cannot meet this standard since the evidence proves otherwise.

At the very minimum, a petitioner must provide "a particularized description of how [his] condition adversely affects [his] capacity to function generally or in relationship to the pursuit of [his] rights." *Id.* at 744 (*citing Boos* at 184). In this case, the plaintiff makes no such demonstration: he has failed to show any relationship between his untimely filing and his treatment with psychotropic medications. In fact, the one piece of evidence the plaintiff supplied to this Court to show the mental affects of the psychotropic medications he was treated with at the time, proves the opposite: that there is no such causal relationship. Indeed, the letter from Arthur W. Davies M.D., who at the request of the plaintiff's attorney had reviewed Glover's medical records for the habeas corpus hearing in 1996, stated:

> In my opinion it would be highly unlikely that the medications he [Glover] was taking at the time impeded or altered his thought processes in any negative manner. What the record does indicate however, is precisely the opposite. Such symptoms of self mutilation and nonverbal behavior resolved and Mr. Glover was competent while medicated.

Clearly, this evidence undermines the plaintiff's allegation that a direct result of the DOC's administration of psychotropic medications he lost his criminal case, missed his appeal and civil suit deadlines, because of the medications' alleged affects on his mental faculties. Rather, as the opinion by Dr. Davies demonstrates, the fact that a person has been receiving psychotropic medications would weigh more in favor of his being able to function, than not. See also, *Williams v. Price*, 2002 U.S. Dist. Lexis 6489, *15. In *Williams*, a prisoner was able to seek post-conviction relief in the state trial and appellate courts during the period of his mental illness. *Id.* at *15. The Eastern District Court of

6

Michigan found that the prisoner was not so mentally incompetent as to warrant equitable tolling of the statute of limitations period for bringing his habeas petition. *Id.* at *16.

Furthermore, as the plaintiff's own clinical records demonstrate, the plaintiff was alert and oriented and very involved in his and his attorney's litigation on his behalf, from 1996 through 2001, and beyond. Indeed, in April 1996, the plaintiff reported that he was doing fine and was working on his appeal, and later that month, discussed his pending pardon and appeal in federal court. Stmt. Facts, ¶ 3. Later that year, he met with his public defender, used the law library to fill out appeal forms and sent them in, showing that he was alert and oriented and aware of his circumstances. Stmt Facts, ¶ 4-7.

In early 1997, the plaintiff was still working on his appeal and discussed it with DOC staff after his attorney, Mr. Moskowitz, sent him a copy of the court's denial of the appeal. Stmt. Facts ¶ 9, 11. During this time, the also plaintiff held a job as a tierman and later as a window washer, and was sending the money home to his wife and daughter, while simultaneously working on furthering his appeal. Stmt. Facts, ¶ 2, 8. 10. These actions demonstrate that he was not the mental vegetable he alleges he was as a result of the medication. Rather, as Dr. Davies noted, the medication merely enabled him to suppress his self-destructive urges so he could participate in as responsible a lifestyle as possible while incarcerated, which he did so by both holding a prison job to earn money to help his wife support their daughter, and working on his criminal appeals to overturn what he felt was an unfair sentence. Stmt. Facts ¶ 31.

Then, in 1998, after Dr. Davies opined that the medication the plaintiff had been treated with to date would have had no affect on his mental capability, the plaintiff consented to be treated with Zyprexa, after which he reported that he felt better and was

7

less sleepy than before. Stmt. Facts. ¶ 13-16. And he was clearly alert, because when the State of Connecticut Appellate Court sent his other attorney, Ms. Hutchinson, a notice in September 1998, that the plaintiff's appeal in the case of *Glover v. Commissioner of Correction* was overdue, the plaintiff handwrote a request for an extension of time to file the brief late. This request was rejected by the court and was sent to his attorney who filed a brief on his behalf shortly thereafter. Stmt Facts. ¶ 17-20. Throughout that year the plaintiff continued to work, had no problems, complaints, or side affects, other than some sleep problems, and was compliant with his medication. Stmt Facts. ¶ 21. But, in September, 1998, the plaintiff voluntarily went off his medication. He told DOC staff that he had been off the medications for several weeks in the last month, but then had decided on his own to start taking them again. Stmt. Facts. ¶ 22.

In 2000, the plaintiff was still potentially dangerous to himself and others as he was still delusional that burning himself would heal his scars and so he was continued on his medications. Stmt Facts ¶ 25-27. But by May, 2001, the plaintiff's thoughts were reported to be well organized and future oriented. On June 15, 2001, he was still pursing his appeal and was not only awaiting word from the court about his appeal, but was also awaiting word from the federal public defender to whom he had applied for assistance in furthering his appeal. Stmt Facts ¶ 28, 29. As this evidence demonstrates, the plaintiff's claim that in 2001 he "re-discovered" the information about his appeal, is a fabrication. The evidence clearly shows that he was completely and thoroughly involved, both personally and through his attorney's, with every aspect of his appeals and was cognizant of each court ruling as it was issued. Indeed, by July, 2001, his biggest concern was his appeal and he was fixated on the idea that he was improperly charged with assault and

8

was using the law library on a regular basis. Stmt. Facts ¶ 31, 32. And the next month, he was losing sleep due to increased stress about his appeal, but had decided that he would claim that pre-trial doses of Haldol had rendered him incompetent to stand trial and thus was unjustly sentenced to more time than he deserved, and he sent out some legal paperwork to that end. Stmt. Facts ¶ 34. Since this is the essence of the claims the plaintiff alleges in the instant lawsuit, that the medication he was administered rendered him incompetent to take action to file a civil suit timely, but he was cognizant of this claim on August 31, 2001 and took action in furtherance of that claim for an appeal, demonstrates that he was not so incompetent that he also could not have simultaneously filed this civil suit.

Furthermore, the records show that by the latter quarter of 2001, he was totally focused on his court case and expressed frustration regarding his efforts to re-open his case and felt at a dead-end, but he was awaiting word from the Civil Liberties organization regarding his request for assistance with his appeals and habeas. Stmt. Facts ¶ 35-37. In fact, the records show clearly that the plaintiff continued to be focused upon his efforts to further his appeal and habeas actions, from 2001 through to the present, including this civil action beginning in 2003. Stmt. Facts ¶ 38-49.

Upon examining the evidence set forth in the defendant's Statement of Undisputed Material Facts, there can be no doubt that the plaintiff was competent during the entire time period in question. He was clearly involved and an eager participant in filing appeals, habeas corpus actions and even pursued a pardon. The plaintiff met with his lawyers and filed *pro se* requests with the courts, he wrote letters for assistance from Inmate Legal Services, Yale Law School, the Federal Public Defender's office and the

9

Civil Liberties Organization. These are not the actions of an individual who is incompetent and unaware of his surroundings. The plaintiff also held a job for several years during the period in question, sending the money he earned home, cognizant of his responsibility to desire to help his wife and support their daughter. This too, is not the action of a man incapacitated from medication. Finally, the medical opinion of Dr. Davies confirms that the medication had only a beneficial affect upon the plaintiff – permitting him to suppress his self-destructive urges while remaining competent. Consequently, given that the medication was not coerced upon him, and in any event, did not affect his mental competency, there was no violation of his right to Due Process and no grounds for a tolling of the Statute of Limitations.

Furthermore, even assuming arguendo, that the plaintiff had shown the presence of extraordinary circumstances, which he has not, that in and of itself would not be enough to justify the application of equitable tolling. *Baldayaque v. U.S.*, 338 F.3d 145, 153 (2d Cir. 2003). A petitioner must also show that he acted with reasonable diligence and it was the extraordinary circumstances which caused his petition to be untimely. *Id.* at 153. The reasonable diligence standard requires the court to ask if the petitioner acted as diligently as reasonably could have been expected under the circumstances. *Id.*

In evaluating whether equitable tolling is an appropriate remedy, this Court, in its discretion, must consider all of the facts and circumstances. *Id.* at 150. If the person who seeks equitable tolling has not exercised reasonable diligence in attempting to file after the commencement of the extraordinary circumstances, the link of causation between the extraordinary circumstances and the failure to file is broken, because, the extraordinary circumstances did not prevent timely filing. *Id.*

In the present case, the plaintiff has not demonstrated that he acted in a reasonably diligent manner. When all of the factors of the plaintiff's case have been considered, it is clear that a reasonable person would have filed a timely complaint. The fact that the plaintiff had the idea of making a claim of incompetence as early as 2001, but took no action civilly until 2003, especially when he ceased being medicated in 2001, it cannot be said that the plaintiff acted with the due diligence necessary to warrant an equitable tolling remedy. Consequently, the defendants are entitled to summary judgment.

## II.  THE PLAINTIFF'S DUE PROCESS RIGHTS WERE NOT VIOLATED

As this Court so aptly pointed out in its decision on the defendant's Motion to Dismiss, although the plaintiff has a liberty interest under the Due Process Clause in being free from the arbitrary administration of antipsychotic medication, this interest is not absolute and must be defined in the context of the inmate's confinement. *See, Washington v. Harper,* 494 U.S. 210, 221-22 (1990) (holding that authorities may medicate inmates against their will if a physician determines that the inmate needs the medication, suffers from a mental disorder, and is gravely disabled or presents a risk of serious harm to himself or others). The Due Process Clause permits the State to treat an inmate who has a serious mental illness with antipsychotic drugs against his will, if he is dangerous to himself or others and the treatment is in the inmate's medical interest. *Id.* at 227. Nevertheless, the plaintiff never asserted this liberty interest. Instead, the plaintiff waived his interest by signing a consent authorizing his treatment with the psychotropic medication Haldol. Exhibit A, pg. 2. *See also Washington v. Harper, supra*, at 214. In *Washington*, the holding encompassed antipsychotic drugs, including Haldol. *Id.*

Moreover, even if the plaintiff had refused to consent to the administration of psychotropic medications, which he did not, the DOC would not have violated the plaintiff's right to Due Process by medicating him against his will.  The plaintiff was a danger to himself.  He burned his private areas while in DOC custody and he had a history of self mutilation.  Because the plaintiff was a danger to himself, DOC staff may have been deliberately indifferent to his serious medical needs if they did not act and he continued to self mutilate. By providing the plaintiff with psychotropic medications, DOC staff acted in compliance with the State of Connecticut Department of Correction's Directive number 8.8,[1] which governs the administration of psychoactive medications.  The plaintiff asserted that physical restrains would have been more effective.  However, research has shown that physical restraints are only effective in the short term, can have serious physical side effects when used on a resisting inmate, and can expose staff to risk of injury while putting the restraints on or tending to an inmate who is in them.  <u>Washington</u> at 226-27.  Moreover, as the plaintiff's recovery demonstrates, the offering of psychotropic medications was appropriate and resulted in the plaintiff discontinuing his self-abusive behavior while continuing in all of his interests and pursuits.

## **CONCLUSION**

Therefore, for the foregoing reasons, the defendants are entitled to summary judgment, as the plaintiff's Due Process rights were not violated, and his Complaint was filed beyond the Statute of Limitations and is not entitled to an equitable tolling because he was at all times cognizant of his claims and competent to file suit.

---

[1] A copy of which is attached and marked as Exhibit I.

12

DEFENDANTS
DEPARTMENT OF CORRECTION

RICHARD BLUMENTHAL
ATTORNEY GENERAL


__/s/_____
Robert B. Fiske, III
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Fed. No, ct17831
(860) 808-5450
e-mail: robert.fiske@po.state.ct.us


**CERTIFICATION**

I hereby certify that a copy of the forgoing was mailed this, the 20th day of September, 2005, first class postage prepaid, to:

Mr. Donald Glover, #216751
Osborn Correctional Institution
335 Bilton Road
Somers, CT 06971

__/s/_____
Robert B. Fiske, III
Assistant Attorney General

13