UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID GLOVER : | |
| : | PRISONER |
| v. : | Case No. 3:02CV1953(AVC)(TPS) |
| : | |
| DEPARTMENT OF : | |
| CORRECTION, et al.[1] : | |

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff David Glover ("Glover") is an inmate currently confined at the Osborn Correctional Institution in Somers, Connecticut. He brings this civil rights action pro se pursuant to 28 U.S.C. § 1915. Glover alleges that the defendants forcibly injected him with psychotropic medication at the time of his criminal trial thereby preventing him from assisting in his defense or appeal and continued to require him to take psychotropic medications until 2001. He seeks declaratory relief only. Defendants have filed a motion for summary judgment on the ground that Glover's claims are time-barred. For the reasons that follow, defendants' motion is granted.

---

[1] The named defendants in the amended complaint are Department of Correction, Dr. Birkowitz, Dr. Weine, Dr. Thankappan and Dr. Bogdanoff. On November 17, 2003, the court dismissed all claims against defendant Department of Correction. (See Doc. #24.)

I.  Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party

must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory

3

statements or an argument that the affidavits in support of the motion for summary judgment are not credible). A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). In addition, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiffs'] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiffs].'" Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (quoting Anderson, 477 U.S. at 252).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II. Facts[2] and Procedural Background

---

[2] The facts are taken from defendants Local Rule 56(a)1 Statement [doc. #33-2] and attached exhibits. On September 28, 2005, Glover was provided notice of his obligation to respond to defendants' motion and of the contents of a proper response. Glover filed his response on October 12 and 19, 2005. Despite specific notice, he did not submit a proper Local Rule 56(a)2 Statement. In the document captioned as a Local Rule 56(a)2

4

In October 1993, Glover was seen by the prison doctor for self-mutilation, he had a history of burning his private areas, and refusal to eat or leave his cell. In addition, Glover exhibited delusional, paranoid and grandiose behavior. On October 24, 1993, Dr. Birkowitz directed that Glover be admitted to the hospital unit and recommended an injection of Haldol, a psychotropic medication. Glover did not want the injection. He leaped over the counter and hit the medic. Glover was restrained and injected. On November 24, 1993, Glover signed a document consenting to treatment with Haldol.

On April 17, 1996, Glover reported that he was doing fine. He stated that he was working on an appeal of his case. On April 30, 1996, he discussed an appeal in federal court and the possibility of a pardon. On July 1, 1996, Glover reported to mental health staff that he had an appointment in the law library for assistance in filling out forms for an appeal of the denial of a state habeas petition. On July 24, 1996, Glover stated that he had received assistance at the law library in completing the forms. He said that he would file the forms once they were

---

Statement, Glover provides a chronological list of dates found in defendants' Local Rule 56(a)1 Statement. Thus, defendants' facts are deemed admitted. See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.")

notarized and copied. On August 14, 1996, Glover reported that he had submitted his appeal, but was not confident in the outcome. On November 20, 1996, Glover stated that he had met with his public defender regarding an appeal and had submitted paperwork requesting a pardon.

On January 6, 1997, Glover's medications were reviewed and renewed. No adverse reactions from the medications were noted at this time and Glover expressed no physical or emotional concerns. Glover stated that he still was waiting for a response to his appeal and pardon application. Glover also reported that he continued to be employed as a tier man and sent home almost all of the money he earned to help support his daughter.

On June 24, 1997, Glover stated that his appeal had been denied. He learned of the denial of the appeal from his attorney. On August 13, 1997, Glover signed a consent form to be placed in the Mental Health Transitional Unit and agreed to follow all unit rules. These rules included following the prescribed treatment plan and medication program.

On May 5, 1998, Dr. Arthur W. Davies responded to Glover's attorney's request for a medical opinion regarding the mental effect of the medications with which Glover was treated, presumably, at the time of his criminal trial. Dr. Davies reviewed the records provided by Attorney Hutchinson and opined

that Glover's thought processes were not impeded or negatively altered by the medications.

On May 21, 1997, Glover asked to see the doctor because a psychiatrist had told Glover that his medication was going to be discontinued. Glover stated that the medication made him too tired, but that he was doing well and getting along with everyone in the unit. Glover also reported that he had gone to court and he believed that his sentence would be reduced.

On August 14, 1998, Glover consented to treatment with the psychoactive medication Zyprexa. On August 21, 1998, he noted that he felt much better on the new medication; he was less sleepy than before. On October 21, 1998, Glover stated that with Zyprexa, he was able to attend AA meetings and work at his job in the housing unit.

On September 20, 1998, the Connecticut Appellate Court sent an overdue brief notice to Attorney Hutchinson, noting that no brief had been filed in Glover's appeal. On September 16, 1998, Glover filed a handwritten request for extension of time to file the appellate brief. On September 18, 1998, the Connecticut Office of Appeals wrote to Attorney Hutchinson and enclosed Glover's request. The request was returned because Glover had not appeared in the appellate case. The court reminded Attorney Hutchinson that, as attorney of record, she was responsible for

filing the appellate brief and directed her to respond to Glover's concerns. Attorney Hutchinson filed an appellate brief in September 1998.

From April through June 1999, Glover reported no problems, complaints or side effects other than some sleep problems. He continued to take his medications and work at his institutional job. On September 9, 1999, Glover reported that he had taken himself off his medications for several weeks in August 1999. He noted that he had decided, on his own, to begin taking his medications again. When Glover asked the psychiatrist if he could stop all medications, the psychiatrist strongly advised against it. On October 12, 1999, Glover stated that he was taking his medications again, even though he did not want to. Glover noted that, when he was off the medications, his thought process sped up and he could think in more detail. He described his life since 1993 as a stupor. Glover was depressed at loss of contact with his daughter and was focusing on searching for her.

On November 2, 2000, Glover was transferred to Osborn Correctional Institution. On November 21, 2000, Glover continued to have delusions that, if he burned his genitals, the scars there would go away. Medical staff recommended that Glover continue his current medications. On December 19, 2000, Glover expressed a desire to stop all medications. However, he remained

8

delusional about his desire to burn his flesh to remove scars in December 2000 and January 2001.

In May 2001, Glover was future-oriented and had well-organized thoughts. In June 2001, he reported waiting for word from the courts regarding his appeal and expressed a desire to take college classes in the fall.

On July 5, 2001, medical staff determined that Glover understood and was fully aware of the risk of refusing his medications. On July 9, 2001, he asked how long the transition period would be now that he had stopped his medications. Glover noted that Prozac had made him hear silly songs in his head and reported an insatiable desire to read. On July 23, 2001, Glover was focused on his appeal. He believed that he was improperly charged with assault and, as a result, was sentenced to an extra ten years.

On August 6, 2001, Glover reported experiencing no changes since discontinuing his medications. He did note a loss of motivation regarding his appeal. On August 8, 2001, Glover stated that he had been reading a lot, but had not been to the law library for two weeks. On August 30, 2001, a psychological assessment revealed no significant change in Glover's mental state since he discontinued his medication. He continued to display mild obsessive traits, some sleep disturbances and

increased stress related to his appeal. Overall, Glover was in good behavioral control with no evidence of self-harming behavior. On August 31, 2001, Glover reported that he intended to challenge his conviction on the ground that pretrial doses of Haldol rendered him incompetent to stand trial.

On October 25, 2001, Glover expressed frustration and feelings of increased stress relating to his efforts to reopen his criminal case. In November 2001, Glover again was focused on his criminal case. He stated that he was experiencing stress while waiting for the Civil Liberties Organization to respond to his inquiry. In December 2001, Glover reported that the Civil Liberties Organization was unable to assist him. He stated that he intended to file a habeas corpus petition, speak to the library supervisor and seek assistance from the Legal Aid program at Osborn Correctional Institution. In January 2002, Glover again expressed frustration regarding his appeal, but indicated that he was making progress.

In February 2002, Glover's frustration level was increasing. He wrote a letter to the trial judge and was very stressful while waiting for a response. In March 2002, Glover still had not heard from the trial judge. Despite increased stress and frustration, Glover remained non-compliant with recommendations that he resume his medications. On March 22, 2002, Glover

10

reported that he had received a letter from the Federal Public Defenders Office regarding his request for assistance. The letter indicated that Glover's case would be reviewed and, if it were deemed worthy, an attorney would visit him. Even this good news increased Glover's stress level.

In April 2002, Glover indicated that he had completed and filed a legal motion. He stated that he wanted to focus on his case, rather than an institutional job. On May 10 and 15, 2002, Glover wanted to talk about his case. His appeal had been denied and he expressed frustration and paranoia because the appeal had been dismissed without explanation. Although Glover wrote a threatening letter to the judge, he destroyed the letter instead of mailing it. On May 30, 2002, Glover stated that he wrote letters to Legal Aid and the court seeking an explanation of the denial of his appeal. He also reported that he had started a new institutional job.

On July 2, 2002, Glover stated that he had received a letter indicating that his appeal was denied because of time limitations and for procedural reasons. This news upset Glover; he was angry and indicated that he should be entitled to special treatment. Later that month, Glover stated that he continued to work on his appeals. In August 2002, Glover learned that he had sent his habeas petition to the wrong court and was informed where he

should file it. On September 4 and 25, 2002, he reported that he was waiting for information from the court. In October 2002, Glover stated that, in response to a letter from the court, he had prepared paperwork and sent it to the appellate court. At this time, he appeared preoccupied with legal matters.

III. Discussion

In his amended complaint, Glover alleges that he was forcibly medicated and rendered unable to assist in his defense at his 1993 criminal trial. He does not challenge his conviction in this action. On November 17, 2003, the court granted defendants' motion to dismiss as to all Eighth Amendment claims and all claims against defendant Department of Correction. Defendants now move for summary judgment as to the remaining claims on two grounds: (1) the claims are time-barred and Glover is not entitled to have the limitations period equitably tolled and (2) if the claims are deemed timely filed, Glover's due process rights were not violated.

Defendants argue that the claims relating to Glover's competency during his criminal trial were filed after the expiration of the limitations period and that he is not entitled to have the limitations period equitably tolled.

The limitations period for filing a section 1983 action is three years. See Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d

12

Cir. 1994) (holding that, in Connecticut, the general three-year personal injury statute of limitations period set forth in Connecticut General Statutes § 52-577 is the appropriate limitations period for civil rights actions asserted under 42 U.S.C. § 1983). Glover's criminal trial occurred in 1993 and his direct appeal concluded in 1998. In addition, the appeal of Glover's state habeas action occurred in 1998. This action was filed on October 23, 2002, the date Glover signed the original complaint and, presumably, gave it to prison officials to be mailed to the court. See Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993) (holding that a pro se prisoner complaint is deemed filed as of the date the prisoner gives the complaint to prison officials to be forwarded to the court)(citing Houston v. Lack, 487 U.S. 266, 270 (1988)). Thus, this case was filed over three years past the last date for any activity in Glover's state court actions. In his amended complaint, Glover alleges that the limitations period should be tolled until 2001, when he discontinued taking the various medications.

The doctrine of equitable tolling permits courts to deem filings timely where a litigant can show that "he has been pursuing his rights diligently" and that "some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, --- U.S. ----, 125 S. Ct. 1807, 1814 (2005). The Second Circuit has

applied equitable tolling "where a plaintiff's medical condition or mental impairment prevented [him] from proceeding in a timely fashion." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (citations omitted). "[W]hether a person is sufficiently mentally disabled to justify tolling of a statute of limitation period is, under the law of this Circuit, highly case-specific." Boos v. Runyon, 201 F.3d 178, 184 (2d Cir. 2000); see also Brown v. Parkchester South Condos., 287 F.3d 58, 59 (2d Cir. 2002). To enable the court to make this determination, plaintiff must, at a minimum, provide "a particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights." Boos, 201 F.3d at 185.

Defendants argue that Glover has provided no evidence suggesting that his medication affected his ability to assist in his defense. The opinion of Dr. Davies, obtained by Glover's attorney in May 1998, states that Glover was competent while medicated during his criminal trial. In addition, defendants point to Glover's medical and mental health records with reveal that he focused on various challenges to his conviction from 1996 until he discontinued his medications in 2001. The records contain frequent references to Glover drafting motions and petitions on his own and working with his attorneys. He was

14

focused on his legal challenges and wanted to talk about them to medical and mental heath staff.

In September 1998, after receiving a copy of an overdue brief notice sent to his attorney, Glover immediately filed a motion for extension of time. The appellate court rejected the motion and returned it to his attorney who filed a brief soon thereafter. This action indicated that Glover was aware of his pending cases and the importance of the notice from the court.

The evidence filed in support of defendants' motion for summary judgment indicates that Glover has been involved in his legal actions since his conviction. He filed appeals and habeas corpus actions and sought a pardon. He filed documents pro se and assisted his attorneys. He wrote letters to various organizations seeking legal assistance.

In response, Glover has filed no evidence supporting his allegations that he was incompetent to pursue a legal challenge during this period. Thus, he fails to meet his burden of demonstrating that his mental condition constituted extraordinary circumstances that would justify tolling the limitations period.

Even if Glover had presented sufficient evidence to show that his mental condition rose to the level of extraordinary circumstances, he has not presented evidence to satisfy the second part of the test. In addition to demonstrating

extraordinary circumstances, Glover must show that he has been diligently pursuing his rights. The mental health records show that, in August 2001, after he had discontinued his medications, Glover stated that he was going claim that medication had made him incompetent during his trial. Although he was aware of the claim, which is the basis of this action, in August 2001, he did not file a complaint until October 2002, fourteen months later. The court concludes that waiting fourteen months to file a complaint show that Glover did not diligently pursue his rights. Thus, even if Glover had presented evidence to show that his medication constituted extraordinary circumstances, he would fail to satisfy the second part of the test to determine whether equitable tolling should apply.

IV. Conclusion

Defendants' motion for summary judgment [doc. #33] is **GRANTED**. The Clerk is directed to enter judgment in favor of defendants and close this case.

**SO ORDERED** this __16TH__ day of November, 2005, at Hartford, Connecticut.

Alfred V. Covello
United States District Judge